UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**SUSAN L. and LEVERETT F. BALDWIN,**
      **Plaintiffs,**

     v.                                         Case No. 15-C-0517

**MILWAUKEE COUNTY and
EMPLOYEES' RETIREMENT SYSTEM
OF THE COUNTY OF MILWAUKEE,**
      **Defendants.**

---

## DECISION AND ORDER

Plaintiffs Susan and Leverett Baldwin have filed a complaint under 42 U.S.C. § 1983 and state law against Milwaukee County and the County's Employees' Retirement System ("ERS"). Before me now is the defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6).

### I. BACKGROUND

The following facts are based on the allegations of the complaint, which I accept as true for purposes of the motion to dismiss. See, e.g., Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 639 (7th Cir. 2015).

Susan Baldwin was an employee of Milwaukee County and a participant in ERS from 1984 until her retirement in September 2003. Prior to her retirement, she was the Director of the County Parks. In her complaint, she alleges that she also worked for the County as a seasonal employee in the register of deeds office from June 23, 1969 to August 8, 1969. Baldwin was not a participant in ERS during that time. In 1999, she asked ERS and the County whether she was eligible, under the County's "buy in" or "buy back"

program, to purchase retirement credit for the time she worked for the register of deeds office in 1969. The manager of ERS asked the County's corporation counsel whether Baldwin was eligible to buy back that time. In response, corporation counsel drafted a memorandum in which he interpreted the Pension Board's rules and concluded that Baldwin was eligible to purchase credit for her seasonal employment. ERS then advised Baldwin that if she paid the County $683.37 she would receive 0.12963 additional years of service credit and that her ERS enrollment date would be changed from April 16, 1984 to June 23, 1969. Baldwin made that payment on September 26, 2000. She retired on September 27, 2003, and began receiving benefits based on the additional service credit.

In September 2007, Baldwin received a letter from an attorney, Steven Huff, on behalf of the County and ERS stating that these entities had filed paperwork with the Internal Revenue Service that reported "operational errors" relating to the buy-back program. Compl. ¶ 50. By that time, it was believed that the program violated both County Ordinances and federal law, and the County and ERS began notifying the County employees who had participated in the program that their pension benefits may be reevaluated.

In April 2014, Baldwin received a letter form the manager of ERS, Marian Ninneman, advising Baldwin that ERS had determined that her purchase of service credit was not permitted by County Ordinances and that ERS was in the process of recalculating her pension benefits. On February 25, 2015, Baldwin received another letter from Ninneman. This letter stated that ERS had concluded that she was not eligible to purchase service credit because she was "never employed in a position that provided for optional membership" under Pension Board rules. Compl. ¶ 65. The letter also stated that ERS

had recalculated her pension benefits to exclude the purchase credit, that her monthly pension benefit would be reduced from $5,121.69 to $3,705.10, and that Baldwin was liable for an overpayment of $223,209.57, plus interest. The complaint alleges that the letter from Ninneman was drafted by Attorney Huff or another attorney at his law firm.

Baldwin appealed the ERS's determination that she was not eligible to purchase service credit to the County's Pension Board. On March 18, 2015, the Pension Board held a hearing on the appeal. The complaint's allegations do not describe the form of this hearing or identify the issues that Baldwin raised. The complaint does not allege that the hearing was adversarial in nature, that any party called witnesses, or that the Board made findings of fact. However, the complaint does allege that at some point during the hearing, the Board went into closed session to deliberate. The complaint alleges that Attorney Huff participated in that closed session and advised the Board to deny the appeal. On March 31, 2015, the Pension Board issued a written decision denying the appeal.

Following the denial of her appeal, Baldwin (and her husband, who has a marital-property interest in her retirement benefits) commenced this action. The complaint alleges that the County's decision to revoke her service credit deprived her of property without due process of law, in violation of the Fourteenth Amendment.[1] The complaint also alleges state-law claims for certiorari review of the Pension Board's decision and for declaratory relief. The defendants, in moving to dismiss the complaint, contend that the plaintiffs have

---

[1]The complaint also alleges that the decision to revoke her service credit constituted a taking of property in violation of the Taking Clause of the Fifth Amendment and violated the Equal Protection Clause. However, the plaintiffs do not pursue these legal theories in their brief in opposition to the defendants' motion to dismiss, and therefore I assume that the plaintiffs have abandoned them.

failed to state a federal claim and that I should relinquish supplemental jurisdiction over the state-law claims.

## II. DISCUSSION

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Co. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. This means that "the complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." Atkins v. City of Chicago, 631 F.3d 823, 832 (7th Cir. 2011).

As noted, Baldwin contends that the defendants' decision to revoke her pension service credit related to her employment in 1969 deprived her of property without due process of law, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. The initial question is whether Baldwin has been deprived of an interest in property that is protected by the Fourteenth Amendment. See, e.g., Leavell v. Ill. Dep't of Natural Res., 600 F.3d 798 (2010) (noting that first question in procedural due process claim is whether plaintiff was deprived of a protected interest). The parties seem to agree that Baldwin has a protected property interest in her pension benefits, and thus I will assume for purposes of this motion that she does. However, the defendants contend that the plaintiff has not

4

pleaded that she has been deprived of that benefit because, so far as it appears form her complaint, her monthly benefit payments have not yet been reduced in accordance with the decision to revoke the additional service credit. The plaintiff does not dispute that her benefits have not yet been reduced, but in her brief she states that this is because she has entered into a tolling agreement with the defendants, under which the County and ERS have agreed not to reduce her pension benefits or collect the overpayment until after this litigation has concluded. She points out that the tolling agreement does not prevent interest from accruing on the overpayment. According to Baldwin, she was deprived of her property interest in the additional service credit on February 25, 2015, the date of the letter from ERS's manager informing her that ERS had decided to revoke the service credit and recalculate her benefits. For purposes of this motion, I will assume that Baldwin is correct and turn to the next question in the due-process analysis—whether Baldwin received all the process to which she was due. Id.

Baldwin does not contend that she was entitled to a hearing before ERS made the initial decision to revoke her additional service credit; that is, she does not contend that she was entitled to "predeprivation" process. See, e.g., Zinermon v. Burch, 494 U.S. 113, 127–28 (1990). Nor does she contend that the state's "postdeprivation" process that was available to her was generally inadequate. Such process consisted of an administrative hearing before the Pension Board and certiorari review of the Board's decision by the state courts. See Wis. Stat. § 68.13 (providing for judicial review of administrative decisions by certiorari). Rather, she contends that the hearing she received before the Pension Board in connection with her appeal was procedurally irregular because of Attorney Huff's

5

involvement.  Baldwin argues that Huff's involvement amounted to an "improper merging of prosecutorial and adjudicatory functions."  Pls.' Br. at 10–11, ECF No. 14.

In support of this argument, Baldwin relies almost exclusively on a case decided by the Wisconsin Court of Appeals, Nova Services, Inc. v. Village of Saukville, 211 Wis. 2d 691 (Ct. App. 1997).  There, the court of appeals determined that a village attorney improperly served in both prosecutorial and adjudicatory roles during an adversary hearing before the village board on a land-use issue involving the operation of a group home for boys.  At the hearing, the village attorney called his own witnesses and cross-examined the witnesses of the operator of the group home.  Id. at 693–94.  At the conclusion of the hearing, the village board went into closed session to deliberate.  Id. at 694.  The village attorney attended the closed session, and after the closed session the board issued a decision against the operator of the group home.  Id.  On appeal, the operator of the group home argued that the attorney's serving as both an advocate during the hearing and an advisor to the decisionmaker violated due process.  Id. at 695.  The court of appeals agreed, stating that "[w]hen an attorney represents a party in earlier proceedings, due process requires that the attorney not act as a decision-maker in the same case."  Id. at 697.

A key problem with Baldwin's reliance on Nova Services is that it is contrary to the federal law of this circuit.  In Lamb v. Panhandle Community Unit School District No. 2, the Seventh Circuit held that a student-suspension hearing before a school board did not deprive the student of due process even though an attorney served as both a prosecutor during the hearing and an advisor to the board during its closed-session deliberations.  826 F.2d 526, 529–30 (7th Cir. 1987).  The court held that "the combination of an advisory

6

function with a hearing participant's prosecutorial or testimonial function does not create a per se facially unacceptable risk of bias." Id. at 530. Thus, while Nova Services may establish that as a matter of state law an attorney cannot serve as both an advocate and an adviser during an administrative hearing, federal law is different. A violation of federal due process does not occur merely because an attorney serves in dual roles at an administrative hearing.

In any event, even if Nova Services were controlling, Baldwin has not pleaded facts suggesting that Huff acted in dual roles, similar to the village attorney in Nova Services. Baldwin has not alleged that Huff served as an advocate at the hearing. As far as the complaint reveals, Huff did not call witnesses, cross-examine Baldwin's witnesses (assuming she called any), or otherwise argue to the Board during the open session that Baldwin's appeal should be denied. Rather, it appears that his role was limited to giving the Board legal advice during the closed session about how to interpret the applicable County ordinances and Pension Board rules. Thus, the complaint does not give rise to a nonnegligible probability that Huff served in both prosecutorial and adjudicatory roles. Baldwin seems to think that Huff's providing legal advice to the Board was improper because he had earlier rendered legal advice to the manager of ERS, which resulted in the manager making the decision to revoke Baldwin's service credit. However, as far as the complaint reveals, the manager and Board members were laypersons who required advice from counsel to properly interpret the ordinances and Pension Board rules. Baldwin cites no authority suggesting that due process required the manager and Board members to obtain advice from separate counsel.

7

Case 2:15-cv-00517-LA   Filed 10/22/15   Page 7 of 9   Document 17

Finally, even assuming that Nova Services were controlling and that Huff's involvement in the hearing was procedurally irregular, Baldwin's claim would still fail because she has not yet availed herself of the additional process available to her under state law—namely, certiorari review of the Board's decision in state court. A procedural due process violation "actionable under § 1983 is not complete when the deprivation [of a protected interest] occurs; it is not complete unless and until the State fails to provide due process." Zinermon, 494 U.S. at 126; accord Leavell, 600 F.3d at 807. Thus, "failing to avail oneself of adequate state court remedies . . . is a substantive failure that defeats the cause of action." Leavell, 600 F.3d at 807. Baldwin does not suggest that certiorari review in state court is somehow inadequate process. Indeed, Nova Services was itself a certiorari case. 211 Wis. 2d at 694–95. This demonstrates that if any procedural irregularities occurred during the Pension Board hearing, the state courts could correct those irregularities and remand the matter to the Board for a new hearing. See id. at 697 (directing that tainted board decision be set aside and that board hold new hearing at which separate counsel is hired to advise the board during deliberations). Accordingly, because Baldwin has not availed herself of this adequate process, she has not alleged that she has been deprived of a property interest without due process of law.

### III. CONCLUSION

For the reasons stated, the plaintiffs have failed to state a federal claim under § 1983. I will relinquish supplemental jurisdiction over their state-law claims. See 28 U.S.C. § 1367(c)(3). Accordingly, **IT IS ORDERED** that the defendants' motion to dismiss is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 22nd day of October, 2015.

    s/ Lynn Adelman
    _____
    LYNN ADELMAN
    District Judge

9

Case 2:15-cv-00517-LA   Filed 10/22/15   Page 9 of 9   Document 17